Mark A. SMITH and Jennifer Smith individuals and as husband and wife, Appellants

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY ("SEPTA") and Troy Mays.

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2006.

Decided Dec. 19, 2006.

---

John F.X. Fenerty, Jr., Huntingdon Valley, for appellants.

Jeffrey A. Krawitz, Philadelphia, for appellees.

BEFORE: SIMPSON, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Mark A. Smith (Smith) and his wife, Jennifer Smith, appeal an order of the Court of Common Pleas of Philadelphia County (trial court) denying their post-trial motion for a new trial in a civil action against the Southeastern Pennsylvania Transportation Authority (SEPTA) and Troy Mays, a SEPTA employee. In this appeal we consider whether the trial court abused its discretion by precluding Smith's treating physician from offering expert testimony on the issue of causation.

On June 5, 2002, Smith's automobile was rear-ended by a SEPTA bus driven by Troy Mays. Smith filed a civil action in negligence against SEPTA and Mays on April 27, 2004, alleging various injuries to his head, neck, back, shoulders, arms, legs, torso and extremities. Smith's wife, who

was not directly involved in the accident, asserted a claim for loss of consortium.

Smith's attorney referred him to Barry Schnall, M.D., who treated Smith on numerous occasions between January 15, 2003, and May 2005. During pre-trial discovery, SEPTA propounded standard interrogatories asking Smith to, *inter alia,* "[s]tate the name and address of each person whom you expect to call as an expert witness at trial and state the subject matter on which the expert is expected to testify." Reproduced Record at 275a (R.R. ——). Smith responded on September 9, 2004, that all medical expert opinions "will be rendered by [Smith's] treating/consulting physicians." R.R. 280a. Smith further advised SEPTA:

> The scope of the subject matter of the medical testimony as well as the substance of facts and opinions are found in the several charts, studies or interventions made concurrently with the care rendered, as well as the reports connected therewith. Testimony will be offered regarding etiology of the injury, diagnostic evaluations, diagnosis, the elements and result of treatment plans and residual effect of the injury and the healing process, and prognoses will be offered for the assessment of future damages.

*Id.* Smith provided all of Dr. Schnall's medical records to SEPTA in conjunction with his response to SEPTA's interrogatories. At no time during discovery did Dr. Schnall tender an expert report or submit verified responses to interrogatories.

At a deposition videotaped two days prior to trial, on May 17, 2005, Smith's counsel offered Dr. Schnall "both as a treating physician and as an expert in the fields of physical medicine and rehabilitation, pain management and electromyography." R.R. 294a. SEPTA's attorney objected to Dr. Schnall offering expert testimony on causation because Dr. Schnall had not offered a written expert report and had formed his opinions in anticipation of litigation and not on the basis of being Smith's treating physician. Over SEPTA's objection Dr. Schnall opined, within a reasonable degree of medical certainty, that Smith had sustained permanent injuries as a result of the accident. Dr. Schnall identified these injuries as a lumbosacral root injury, a lumbosacral disc injury, exacerbation of a pre-existing arthritic condition, and unresolved sprain and strain of the back muscles.

On May 19, 2005, the parties proceeded to a jury trial on the issues of causation and damages; SEPTA had conceded liability for the accident. During the trial, Smith offered into evidence the videotape of Dr. Schnall's deposition. SEPTA's attorney objected to the portion of Dr. Schnall's testimony where he offered his opinion that the motor vehicle accident caused the four injuries identified above. The trial court sustained the objection and ordered the challenged portion of Dr. Schnall's testimony redacted. In order to establish causation without Dr. Schnall's testimony, Smith read to the jury an excerpt from a report authored by SEPTA's independent medical examiner, Robert Dalsey, M.D. Dr. Dalsey opined that Smith's low back sprain and strain resulted from the accident on June 5, 2002, but any other injuries or complaints did not result from the accident.[1]

---

1. Counsel read the following excerpt from Dr. Dalsey's report to the jury:

 The medical records support the diagnosis of left sacroilliac injury with sacroiliosis. He had a protracted course of conservative care with subjective incomplete recovery and the condition has been stable and unchanged.

 No change in his condition is anticipated.

 *The medical records support a diagnosis of*

The jury rendered a verdict in favor of Smith and found, specifically, that the accident of June 5, 2002, was a "factual cause of bringing about any harm to [Smith]." R.R. 64a. The jury awarded $70,000 in damages to Smith and zero dollars to his wife for loss of consortium.

Smith filed a motion for post-trial relief on June 2, 2005, requesting a new trial. The trial court conducted a hearing and denied Smith's motion on January 17, 2006. Final judgment was entered on the jury's verdict on January 30, 2006. Smith then filed a notice of appeal[2] from the trial court's order denying post-trial relief. The trial court directed Smith to file a concise statement of matters complained of on appeal pursuant to PA. R.A.P. 1925(b). Smith filed a timely Rule 1925(b) statement, approximately five pages in length and containing legal argument and citations to authority. Smith maintained that the jury's award was insufficient because

the trial court, by precluding Dr. Schnall's causation testimony, prevented the jury from learning the true nature and extent of Smith's injuries.

The trial court issued a Rule 1925(a) opinion on June 1, 2006, recommending that Smith's appeal be quashed for failure to conform with PA. R.A.P. 1925(b)[3] and, alternatively, that the trial court's denial of post-trial relief be affirmed on the merits. The trial court reasoned that because Smith was referred to Dr. Schnall by his attorney, Dr. Schnall's testimony on causation was developed in anticipation of litigation and therefore qualified as expert testimony under PA. R.C.P. No. 4003.5. The trial court further found that it had properly limited Dr. Schnall's testimony because Smith had not identified Dr. Schnall as an expert and had not submitted an expert report in response to SEPTA's interrogatories. The trial court also noted Smith's failure to comply with a case man-

---

*lumbosacral sprain and strain as a result of the accident on June 5, 2002* and the claim of a long course of conservative care with incomplete recovery.

The imaging studies that were completed did not identify any acute fracture and trauma, disk herniation, early degenerative disease showed a hypotrophy and minor bulging and the condition is stable and unchanged. No change in the condition is anticipated.

*His current complaints are reasonably attributed to the degenerative disk disease* on the imaging study and the opinions expressed are to a reasonable degree of medical certainty.

R.R. 50a (emphasis added).

**2.** Smith initially appealed. to the Superior Court. By order dated March 8, 2006, the Superior Court transferred the appeal to this Court based upon SEPTA's status as an agency of the Commonwealth.

**3.** In its brief to this Court, SEPTA also requests that we quash Smith's appeal for noncompliance with PA. R.A.P. 1925(b). We decline to impose such a drastic sanction in this

case. Recent decisions by our Supreme Court have, as SEPTA observes, reinforced the bright-line rule that "in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to PA. R.A.P. 1925. Any issues not raised in a Pa. R.A.P. 1925(b) statement will be deemed waived." *Commonwealth v. Castillo*, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) (quoting *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998)). These cases concern Rule 1925(b) statements that are untimely, or which fail to identify issues that an appellant later attempts to raise on appeal. In the case *sub judice,* Smith's Rule 1925(b) statement may be technically non-compliant insofar as it is over-inclusive and not "concise." There is no impediment to effective appellate review. This case is clearly distinguishable from the one case cited by SEPTA where the Superior Court quashed an appeal for failure to file a concise Rule 1925(b) statement. In that case, *Kanter v. Epstein,* 866 A.2d 394 (Pa.Super.2004), the two appellants each filed 15–page Rule 1925(b) statements identifying a total of 104 issues.

agement order obligating him to identify all experts and submit corresponding expert reports by January 3, 2005. The trial court viewed Smith's attempt to offer Dr. Schnall as an expert on the eve of trial as prejudicial to SEPTA because SEPTA's counsel had no time to prepare an adequate response. By contrast, the trial court observed that Smith was not prejudiced by the redaction of Dr. Schnall's testimony, and not entitled to a new trial, because the jury ultimately found in his favor.

On appeal, Smith argues that the trial court abused its discretion by denying his post-trial motion for a new trial. Smith contends that the trial court erred by precluding the jury from hearing Dr. Schnall's testimony on causation. Specifically, Smith maintains that the trial court misapplied PA. R.C.P. No. 4003.5 by not announcing, at trial, the affirmative finding that SEPTA would be prejudiced by the disputed testimony. Smith posits that the trial court's evidentiary ruling was prejudicial to his case because the excluded testimony would have linked the motor vehicle accident to four injuries, whereas Dr. Dalsey's report attributed only one injury to the accident.

■■■ Trial courts have broad discretion to grant or deny a new trial. *Harman v. Borah*, 562 Pa. 455, 465, 756 A.2d 1116, 1121 (2000). Although all new trial orders are subject to appellate review, it is well established that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial. *Id.* at 466, 756 A.2d at 1122. Our Supreme Court has identified a two-step process that a trial court must follow when responding to a request for a new trial. First, the trial court must decide whether one or more mistakes occurred at trial. *Id.* at 467, 756 A.2d at 1122. Second, if the trial court concludes that a mistake occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. *Id.* This second factor recognizes that the so-called "harmless error doctrine" underlies every decision to grant or deny a new trial; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the alleged mistake. *Id.*

Beginning with the first prong of the *Harman* analysis, we must review whether the trial court's determination to redact Dr. Schnall's testimony was a mistake. Central to this issue is the trial court's application of PA. R.C.P. No. 4003.5, which provides, in pertinent part, as follows:

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) A party may through interrogatories require

(a) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) the other party to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his or her answer a report of the expert or have the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.

\* \* \*

(b) An expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

PA. R.C.P. No. 4003.5. The explanatory comment to Rule 4003.5, while not binding on this Court, is instructive. It advises that, with respect to the disclosure requirements in subsection (a)(1)(b),

[t]he answering party has the option of having the expert answer the interrogatories himself ... or prepare a separate report which the answering party may attach to his answers. The answer or separate report must be signed by the expert.... If the answering party or the expert does not fully comply with the foregoing, the court under subdivision (b) ... may exclude or limit the testimony of such expert if offered at the trial.

PA. R.C.P. No. 4003.5, Explanatory Comment (1978).

▮ We agree with the trial court that Smith failed to comply with the disclosure requirements set forth in Rule 4003.5. Smith stated in his answer to SEPTA's interrogatory that all medical expert opinions "will be rendered by [Smith's] treating/consulting physicians," but he did not specifically identify Dr. Schnall to be one of those physicians. Nor did Dr. Schnall identify the substance of the opinions on causation to which Smith expected him to testify, either by answering the interrogatories himself or by preparing and signing an expert report. PA. R.C.P. No. 4003.5(a)(1)(b). Merely attaching Dr. Schnall's treatment records to his answers to interrogatories was not, as Smith suggests, the equivalent of submitting an expert report for purposes of Rule 4003.5. Those documents indicate only that the date of injury was June 5, 2002, and describe Dr. Schnall's observations, diagnoses and treatment recommendations. They do not set forth what may properly be viewed as an expert opinion on causation.

Having found that Smith violated Rule 4003.5, we must determine whether the trial court abused its discretion in sanctioning Smith by excluding Dr. Schnall's causation testimony. Our Supreme Court has noted that the sanctions authorized by Rule 4003.5 are not obligatory; the trial court should impose sanctions after "balanc[ing] the facts and circumstances of each case to determine the prejudice to each party." *Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 573, 517 A.2d 1270, 1273 (1986).

Before we consider the trial court's application of the *Feingold* balancing test, we must address Smith's primary argument on appeal that the trial court had to explain its ruling at the trial itself by announcing an affirmative finding of prejudice in order to impose sanctions under Rule 4003.5. This supposed requirement is found neither in the text of the Rule itself nor in any controlling authority interpreting the Rule, including *Kurian v. Anisman,* 851 A.2d 152 (Pa.Super.2004), a case which Smith argues supports his position.

In *Kurian,* the plaintiffs in a medical malpractice action failed to meet a court-imposed deadline for identification of expert witnesses and submission of expert reports. Thereafter, the defendants moved for summary judgment. Plaintiffs filed timely responses to the summary judgment motions and attached an expert

report prepared by the decedent's treating physician. The trial court refused to accept the expert report, reasoning that it would cause defendants unfair surprise and prejudice. On appeal, plaintiffs argued that under PA. R.C.P. No. 1035.3(b) they were permitted to "supplement" the record within 30 days after service of the summary judgment motions.[4] Thus, the specific issue before the Superior Court in *Kurian* was how to reconcile Rules 1035.3 and 4003.5 when a party makes a timely response to a summary judgment motion and attempts to supplement the record with otherwise untimely expert reports.

In answering that question, the Superior Court held that "when Rule 4003.5(b) is read in harmony with Rules 1035.3 and 1035.2, it becomes apparent that prejudice must be taken into account in such cases." *Kurian*, 851 A.2d at 159. In other words, notwithstanding the intent of Rule 1035.3(b) to allow supplementation of the record, a trial court must still "apply the long-standing prejudice standard found in the caselaw construing Rule 4003.5(b)" when the supplemental material includes an untimely expert report. *Id.* Later in its opinion, the Superior Court recognized that preclusion of expert testimony is a drastic sanction and noted that "prejudice must be determined by the trial court *before* an expert's testimony may be excluded." *Id.* at 162 (emphasis added).

Smith interprets this language to mean that a trial court must make an on-the-record finding of prejudice before excluding expert testimony under Rule 4003.5, ascribing a purely temporal meaning to the Superior Court's use of the word "before." However, what the Supreme Court meant was simply that a trial court must find some prejudice to the adverse party *in order to* bar the proponent of untimely expert evidence from offering such evidence. It makes no difference when the trial court explains the rationale for its decision, whether it is on the record at the time of its ruling or, as in the case *sub judice*, in its opinion *sur* appeal.

 Here, the trial court explained in its Rule 1925(a) opinion that SEPTA would have been prejudiced by Dr. Schnall's expert testimony on causation, which the court characterized as "surprise" testimony. Trial Court Opinion at 9.[5] We must agree. Smith did not depose Dr. Schnall until May 17, 2005, literally on the eve of trial. That was the first time Smith offered Dr. Schnall as an expert and questioned him on the issue of causation. The very purpose of Rule 4003.5 is to avoid such unfair surprise and to allow the opposing side time to prepare an adequate response to the expert's testimony. Obviously SEPTA would have been prejudiced

---

4. Rule 1035.3 provides that the adverse party to a summary judgment motion may not rest upon the mere allegations or denials of the pleadings but must file a response within 30 days after service of the motion identifying (1) issues of fact arising from the evidence of record or (2) evidence in the record establishing the facts essential to the cause of action which the motion cites as not having been produced. PA R.C.P. No. 1035.3(a). The adverse party may also *"supplement the record* or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evi-

dence." PA. R.C.P. No. 1035.3(b) (emphasis added).

5. Notably, the trial court in *Kurian* offered the same rationale for excluding the plaintiff's untimely expert report: "the acceptance of this expert witness report on the day the parties were supposed to go to trial would cause appellees unfair surprise and prejudice." *Kurian*, 851 A.2d at 162. The Superior Court affirmed, agreeing with the trial court that appellees would have been "left with no time to evaluate and respond to the expert testimony." *Id.*

by the inability to respond to the surprise expert testimony.

By contrast, the potential prejudice to Smith was minimal at best. The jury heard testimony from Smith and Dr. Schnall on the nature of his injuries and his pain and suffering. The jury returned a verdict in Smith's favor, awarding him $70,000 based upon its specific finding that the automobile accident was a "factual cause of bringing about *any* harm to [Smith]." R.R. 64a (emphasis added). For the same reason, even assuming the trial court had erred by redacting Dr. Schnall's testimony, Smith could not satisfy the second requirement for a new trial set forth in *Harman v. Borah*, 562 Pa. 455, 467, 756 A.2d 1116, 1122 (2000) (any mistake that occurred at trial must provide a sufficient basis for granting a new trial). Because Smith prevailed on the issues of causation and damages, any error by the trial court would have been harmless.

For the foregoing reasons, we find that the trial court committed no error or abuse of discretion by excluding Dr. Schnall's testimony on causation, which we note was a far less drastic sanction than the total preclusion of his testimony authorized under PA. R.C.P. No. 4003.5(b). Smith was not entitled to a new trial on the basis of this alleged error, and, accordingly, the order of the trial court denying his motion for post-trial relief is affirmed.

### *ORDER*

AND NOW, this 19th day of December, 2006, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter, dated January 17, 2006, is AFFIRMED.