J-A24041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CAROL DEY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BRUCE J. WILDERMAN, D.D.S., | |
| Appellee | No. 424 EDA 2014 |

Appeal from the Judgment Entered October 25, 2013
in the Court of Common Pleas of Bucks County
Civil Division at No.: 2010-04845

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 06, 2014**

Appellant, Carol Dey, appeals from the judgment entered on October 25, 2013,[1] following a jury verdict against her and in favor of Appellee, Dr. Bruce J. Wilderman, D.D.S., in this dental malpractice action.  On appeal, Appellant challenges several of the trial court's evidentiary rulings.  For the reasons discussed below, we affirm.

We take the underlying facts in this matter from the trial court's April 3, 2014 opinion.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant purports to appeal from the order denying her post-trial motions. However, an appeal does not lie from the denial of post-trial motions. **Jackson v. Kassab**, 812 A.2d 1233, 1233 n.1 (Pa. Super. 2002), appeal denied, 825 A.2d 1261 (Pa. 2003). We have accordingly corrected the caption.

[Appellant] is a sixty-nine (69) year old woman, and a dental patient of [Appellee], a licensed dentist. In March of 2008, [Appellant] went to [Appellee's] office for an emergency dental appointment when she cracked a tooth and needed it repaired. [Appellant] had a follow-up appointment on May 29, 2008. Upon arriving at [Appellee's] office[,] she had x-rays and photographs taken of her mouth. The x-rays were taken, and then the photographs were to be taken by the dental assistant, Danielle Ficarra (hereinafter, "Ficarra").

[Appellant] testified that Ficarra explained the process of taking these photographs, and the use of spraying condensed air into [Appellant's] mouth. The purpose of this spray was to blow saliva away from the gum line to obtain an accurate photograph. Ficarra inadvertently picked up a can of dust remover, rather than the can of compressed air. Ficarra sprayed the dust remover to dry the saliva off [Appellant's] teeth. [Appellant's] testimony was she immediately felt a burning sensation on her lips following the first spray, and told Ficarra of this sensation. Ficarra assured [Appellant] this was just compressed air and the air probably felt cold to her lips. [Appellant] allowed Ficarra to continue with another photograph. Ficarra instructed [Appellant] to make a broader smile with her face to give a greater exposure. Ficarra proceeded to spray the dust remover a second time, and [Appellant] felt the same burning sensation. [Appellant] again told Ficarra of the burning sensation, who reassured [Appellant] that it was ". . . just a can of air. There's nothing in here that would burn your lips."

Ficarra continued the process of spraying [Appellant's] mouth prior to taking a picture. [Appellant] testified that on one occasion, Ficarra attempted to spray the saliva off of [Appellant's] teeth, and air failed to be released from the nozzle. [Appellant] stated that Ficarra then used both hands to squeeze the nozzle, and "something liquid" came out of the can. The liquid came in contact with [Appellant's] upper lip, in the area right below her nose. Ficarra then put down the can and stated, ". . . oh, my God, what is that? There's some white on your face." [Appellant] told Ficarra that whatever the substance was had gone up her nostrils, into her throat, and was severely burning. Ficarra left the room and came back with wet paper towels. Ficarra then wiped off [Appellant's] face with a wet paper towel, at which point [Appellant] told her she was sick to her stomach and did not wish to continue. Ficarra assured

- 2 -

[Appellant] that there would only be a few more pictures, and that they would be done soon. There were no more sprays of the dust remover.

When the photographs were finished, [Appellant] went into the bathroom and vomited twice. The burning sensation had travelled from her nose, down her throat and into her stomach. [Appellant] drank a glass of water, which made the burning sensation much worse, and caused [Appellant] to vomit again. [Appellant] then told Ficarra that she did not feel well, and left the appointment. [Appellant] walked out to her car to drive home, and had to stop a few times to vomit again.

Upon arriving home, [Appellant's] condition worsened, as she felt shaky, dizzy, and had a "very bad burning in my throat and my stomach and my mouth." [Appellant] called the manufacturer of the dust remover and asked about the ingredients. She was instructed to eat a piece of chocolate to relieve the burning sensation and to drink some milk. She could not taste the chocolate at all, and could not smell her fragrance shampoo. [Appellant] went to her office in order to be around people in case her condition worsened. She testified that following this incident, her stomach and mouth gradually felt better, but her smelling and tasting did not improve. [Appellant] testified that her sense of smell and taste has not changed since May 29, 2008, the day of the incident.

Ficarra's testimony differed from [Appellant's]. Ficarra testified that she sprayed the dust remover into [Appellant's] mouth only one time because there was not enough saliva on [Appellant's] teeth during the first few photographs, and the spray was not necessary until the last photograph. Ficarra denies that a white substance came out of the can and made contact with [Appellant's] upper lip. Ficarra testified it was not her practice to continue using a product if it made a patient uncomfortable or hurt them. Ficarra denies she was told that the spray was causing a burning sensation, and if told she would have stopped and immediately notified [Appellee]. Ficarra did testify that after the first spray, [Appellant] was sneezing and coughing. [Appellant] then went to the bathroom, and asked Ficarra for a drink. Ficarra provided [Appellant] with a soft drink, upon which [Appellant] said she was not feeling well and left the office.

(Trial Court Opinion, 4/03/14, at 2-5) (footnotes omitted).

On May 6, 2010, Appellant filed a complaint in dental malpractice. On July 23, 2010, Appellee filed an answer and new matter. On May 30, 2013, Appellant filed a motion *in limine* seeking to preclude the testimony of Appellee's expert, Dr. Harry A. Milman.[2] (**See** Motion *in Limine*, 5/30/13, at 3). Appellant contended that Appellee had not produced Dr. Milman's expert report in a timely fashion. (**See id.** at 2). Following oral argument on June 17, 2013, the trial court denied the motion *in limine* the next day. (**See** N.T. Motion Hearing, 6/18/13, at 3).

In addition, during the June 18, 2013 hearing, the parties litigated the issue of whether Appellant, in her opening statement, could refer to an independent medical examination (IME) conducted, by agreement of the parties, by Dr. Kenneth Briskin, an ear, nose and throat (ENT) specialist. (**See id.** at 3-5). Neither party was calling Dr. Briskin as a witness at trial. (**See id.**). Appellee objected to any references to Dr. Briskin or his findings. (**See id.**). The trial court sustained the objection as to the mention of Dr. Briskin in opening statements, but reserved ruling on whether either party could mention Dr. Briskin at trial. (**See id.** at 13-14). On June 19, 2013,

_____

[2] Both Dr. Milman's first and last names are spelled differently throughout the record in this matter. We will use the spelling listed on his resume, Dr. Harry A. Milman. (**See** Motion *in Limine*, 5/30/13, at Exhibit B).

the trial court revisited its ruling and held that neither party could reference Dr. Briskin. (**See** N.T. Trial, 6/19/13, at 163).

> During the trial, both sides presented expert witnesses. [Appellant's] expert witness was Dr. Richard Doty, Director of the Smell and Taste Center at the University Of Pennsylvania School Of Medicine. Dr. Doty stated that he performed many tests on [Appellant], and she has a complete loss of smell. In addition, [Appellant] exhibited some loss of taste, but not as drastic as her loss of smell. Dr. Doty said that the dust remover incident on May 29, 2008 was the "best explanation I would have" for [Appellant's] loss of smell. This opinion was offered with reasonable scientific certainty. [Appellee's] expert witness was Dr. Harry [Milman], an expert on pharmacology and toxicology. He testified that the active ingredient in the dust remover does not have the ability to cause loss of smell or taste in liquid or gas form.

> [Appellee] stipulated to liability, and causation and damages were issues for the jury.

(Trial Ct. Op., at 5) (footnotes omitted).

Prior to Appellee's testifying, Appellant asked for an offer of proof with respect to Appellee's testimony. (**See** N.T. 6/21/13, at 3). Defense counsel stated that he wanted Appellee to testify, as an expert, about the photographs taken of Appellant's teeth. (**See id.** at 3-4). Ficarra took these photographs on the date of the incident, and counsel wanted Appellee to opine on whether they showed spray on them and draw conclusions from his viewing of the pictures. (**See id.** at 3-4). The trial court ruled that Appellee could not testify as an expert about Appellant's medical problems. (**See id.** at 29, 32). However, the trial court did rule that Appellee could describe what was on the photographs. (**See id.** at 32). When Appellee took

the stand, he testified that saliva was present in some of the photographs of Appellant's mouth. (*See id.* at 40, 42-48, 50).

At the close of evidence, Appellant requested a directed verdict, which the trial court denied. (*See* N.T. 6/24/13, at 28). On June 24, 2013, the jury found in favor of Appellee and against Appellant. On July 2, 2013, Appellant filed a motion for post-trial relief, which the trial court denied on October 17, 2013. The Prothonotary entered judgment on October 25, 2013. Appellant filed a motion for reconsideration on November 6, 2013, which the trial court granted on November 12, 2013. The trial court subsequently held oral argument on the motion for post-trial relief. On January 21, 2014, the trial court again denied the motion for post-trial relief. The instant, timely appeal followed. On February 12, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). On March 10, 2014, Appellant filed a timely concise statement. *See id.* On April 3, 2014, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

I.    Whether the trial court committed error of law or abused its discretion in denying [Appellant's] request for a directed verdict on the issue of causation?

II.    Whether the honorable trial court committed error of law or abused its discretion in permitting [Appellee] to testify about saliva on photographs?

III. Whether the honorable trial court committed error of law or abused its discretion in denying [Appellant's] motion *in limine* to preclude the testimony of defense expert [Harry] Milman, PhD, due to the late identification and production of an expert report?

IV. Whether the honorable trial court committed error of law or abused its discretion in precluding [Appellant] from making any references to the medical evaluation performed on behalf of the defense by Kenneth B. Briskin, M.D., an ENT physician?

(Appellant's Brief, at 5).

In her first claim, Appellant alleges that the trial court erred in denying her request for a directed verdict on the factual cause of harm because "there was no dispute that the negligence of [Appellee] caused [Appellant] some degree of harm." (Appellant's Brief, at 13). We disagree.

> A directed verdict may be granted only where the facts are clear and there is no room for doubt. In deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony.

*Keffer v. Bob Nolan's Auto Service, Inc.*, 59 A.3d 621, 632 (Pa. Super. 2012), *appeal denied*, 69 A.3d 602 (Pa. 2013) (quotation marks and citation omitted).

> In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in the light most favorable to the verdict winner. Our standard[s] of review when considering the motions for a directed verdict and judgment notwithstanding the verdict [JNOV] are identical. We will reverse a trial court's grant or denial of a [directed verdict or JNOV] only when we find an

- 7 -

abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

> There are two bases upon which a [directed verdict or JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Hall v. Episcopal Long Term Care*, 54 A.3d 381, 395 (Pa. Super. 2012), *appeal denied*, 69 A.3d 243 (Pa. 2013) (citation omitted).

Here, Appellant premises her claim entirely on her belief that both her expert, and Appellee's expert, Dr. Milman, testified that she had suffered an injury because of being sprayed with dust remover. (**See** Appellant's Brief, at 19-21). However, Appellant mischaracterizes Dr. Milman's testimony. In relevant part, Dr. Milman testified as follows:

> [Appellant's Counsel]: Well, you do know, since apparently you're relying upon certain things which were said, you do know that my client said that it gave her a burning sensation; is that correct?
>
> [Dr. Milman]: Yes.
>
> [Appellant's Counsel]: That's an indication of some injury, is it not?
>
> [Dr. Milman]: Yes.

[Appellant's Counsel]: And you acknowledged that for some weeks thereafter, although she improved, she continued to complain of pain in her throat and in her nostrils. Is that so?

[Dr. Milman]: That was her testimony, yes.

[Appellant's Counsel]: And that's an indication of injury, is it not?

[Dr. Milman]: It could be, yes.

(N.T. Trial, 6/20/13, at 214-15). Thus, Dr. Milman did not concede that Appellant suffered any injury; he testified that he was aware of Appellant's testimony that she believed she suffered an injury. He also testified that there was no scientific proof that being sprayed with the dust remover caused Appellant's injuries. (**See id.** at 216).

In **Holland v. Zelnick**, 478 A.2d 885 (Pa. Super. 1984), the plaintiff claimed to have neck pain because of a car accident, a claim supported by her experts but not by the defense expert. **See Holland**, **supra** at 886. On appeal, the plaintiff argued that the trial court should have found for her on the issue of causation and she sought a new trial limited to damages. **See id.** This Court found the plaintiff was not entitled to a new trial on damages, stating:

> This is not a case where a defendant is found to be negligent and his negligence is found to have caused plaintiff's injuries, but an award of adequate damages is not returned because of some subjective view on the part of the jury. In this case despite the finding of negligence on defendant's part for "bumping" plaintiff's vehicle, the jury clearly found that defendant's actions had nothing to do with plaintiff's condition, real or otherwise. **Simply put, the jury rejected the testimony of plaintiff's expert medical witnesses and accepted the testimony of**

- 9 -

**defendant's expert.** The jury simply did not believe that the headaches and other severe pain described by plaintiff and her parents at her trial were caused by defendant's negligent action in bumping plaintiff's vehicle. Thus, the jury found that defendant's negligence was not the proximate cause of plaintiff's complaints and the failure of it to find proximate cause was fatal to plaintiff's claim.

*Id.* at 887 (emphasis added).

Here, as in **Holland**, there was a disagreement among the experts as to whether Appellee's negligence caused Appellant's injury. Given this, the trial court properly gave the case to the jury to determine the credibility of the expert witnesses, because, as in **Holland**, Appellant was not entitled to a directed verdict on causation.[3] **See id.** Appellant's first claim lacks merit.

_____

[3] Appellant's reliance on **Neison v. Hines**, 653 A.2d 634 (Pa. 1995) and **Mano v. Madden**, 738 A.2d 493 (Pa. Super. 1999) (*en banc*) is misplaced. (**See** Appellant's Brief, at 14-15). In **Neison**, the plaintiff went immediately to a hospital and physicians treated her there for injury resulting from an automobile accident, for which the defendant admitted liability. **See Neison**, **supra** at 637-38. Her experts testified as to her lingering injuries, and the defendant's expert, while contesting that her injuries continued some two years after the accident, did not contest that she suffered some injury because of the accident. **See id.** at 636. However, the jury did not award any damages and the trial court granted a motion for a new trial. **See id.** Thus, because of the uncontroverted testimony that the plaintiff suffered some injury, our Supreme Court held that the trial court correctly awarded a new trial as to damages. **See id.** at 638-39. Likewise, in **Mano**, the trial court issued a directed verdict as to the defendant's negligence in an automobile accident and both parties' medical experts testified the plaintiff suffered some injury because of the accident. **See Mano**, **supra** at 495, 497. Thus, we held that, "[i]t is impermissible for a jury, in a personal injury case, to disregard the uncontroverted testimony from the experts for both parties that the plaintiff suffered some injury as a result of the accident in question." **Id.** at 497 (citation omitted). Here, as discussed above, the

*(Footnote Continued Next Page)*

In her second claim, Appellant alleges that the trial court erred in allowing Appellee to testify regarding his review of photographs, which allegedly showed saliva on Appellant's teeth. (*See* Appellant's Brief, at 22-25). We disagree.

Our standard of review with respect to the admissibility of evidence is narrow:

> [w]hen we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Stumpf v. Nye*, 950 A.2d 1032, 1035-36 (Pa. Super. 2008), *appeal denied*, 962 A.2d 1198 (Pa. 2008) (quotation marks and citation omitted). A party suffers prejudice when the trial court's error could have affected the verdict. *See Trombetta v. Raymond James Financial Services, Inc.*, 907 A.2d 550, 561 (Pa. Super. 2006).

Here, as discussed above, the trial court did not permit Appellee to testify as an expert but only as to his perceptions and matters within his

*(Footnote Continued)* ————————————

experts disagreed as to whether Appellant suffered some injury as a result of Appellee's negligence, thus neither **Neison** nor **Mano** is apposite.

- 11 -

personal knowledge. (***See*** N.T. Trial, 6/21/13, at 28, 32). Appellant argues that Appellee violated this ruling by testifying about the presence of saliva in the photographs, which, she argues, led to the inference that saliva would not have been present if Ficarra had sprayed her with dust remover. (***See*** Appellant's Brief, at 22-24). However, Appellant does not point to, and our review of the record does not demonstrate that, the trial court ever prohibited Appellee from testifying that he saw saliva on the photographs. (***See*** N.T. Trial, 6/21/13, at 3-32). Rather, the trial court ruled that while Appellee could testify as to his observations of Appellant's teeth from the photographs, he could not testify about whether there was a causal link between the condition of her teeth and her alleged loss of her senses of taste and smell. (***See id.*** at 32; Trial Ct. Op., at 13-14).

This Court has stated:

> A lay witness may express an opinion if it is based upon his own perceptions and helpful to a clear understanding of his testimony or the determination of a fact in issue. Although the admission of an opinion on an ultimate issue of fact does not constitute error *per se*, . . . if its admission would confuse, mislead, or prejudice the jury, it should be excluded. In order for a ruling on evidence to constitute reversible error, it must be shown not only to have been erroneous, but harmful to the party complaining. The appellant must prove the court erred in admitting the challenged evidence and that the appellant was unduly prejudiced thereby.
>
> > The decision whether testimony constitutes fact or opinion may be difficult, for there is no litmus test for fact versus opinion. Often testimony that might be classified as opinion is nevertheless admitted almost as a matter of course. Statements such as "it made an awful racket," "the weather was

- 12 -

miserable", "he looked drunk", are in a sense all opinions, but a little attention to our every day way of speaking will show that they are more accurately classified as shorthand, or compendious, statements of fact, based on personal observation. . . . In such cases the experienced trial judge will admit the statement.

Nevertheless, [p]ersonal knowledge remains a prerequisite to the admissibility of an expression of lay opinion.

*McManamon v. Washko*, 906 A.2d 1259, 1276 (Pa. Super. 2006), *appeal denied*, 921 A.2d 497 (Pa. 2007) (citations and some quotation marks omitted).

Here, it is questionable that Appellee's testimony even constituted opinion testimony, as it was more in the line of statements of facts based upon his personal observations of the photographs. (*See* N.T. Trial, 6/21/13, at 40-52). In any event, even if we were to find that Appellee's testimony constituted opinion testimony, Appellant does not dispute, (*see* Appellant's Brief, at 22-25), that it was within Appellee's personal knowledge, as a dentist with over twenty-five years' experience, (*see* N.T. Trial, 6/21/13, at 36), to opine on photographs of his patient's dentition. We see nothing in Appellee's testimony that constituted impermissible opinion testimony. *See McManamon*, *supra* at 1276.

Moreover, Appellant has not demonstrated, beyond a bald statement, that the admission of this testimony prejudiced her, (*see* Appellant's Brief, at 25), because Appellee never testified that the presence of saliva had any relationship to Appellant's claims of injury. This Court has held that where

- 13 -

an Appellant fails to explain in what way the testimony was prejudicial or provide argument as to prejudice, this Court cannot find that the evidence was unduly prejudicial. *See Smith v. Morrison*, 47 A.3d 131, 137 (Pa. Super. 2012), *appeal denied*, 57 A.3d 71 (Pa. 2012) (where appellant made only bald statements of prejudice "we cannot find that the evidence was so prejudicial as to divert the jury's attention away from its duty of weighing the evidence impartially."). Thus, because Appellant has not shown that the trial court abused its discretion in admitting Appellee's testimony, her claim must fail.[4] *Id.*

In her third claim, Appellant avers that the trial court erred in denying her pre-trial motion *in limine* to exclude the testimony of Dr. Harry A. Milman, due to the late production of his expert report.[5] (*See* Appellant's Brief, at 25-29). We disagree.

_____

[4] Appellant's reliance on *Kurian ex rel. Kurian v. Anisman*, 851 A.2d 152 (Pa. Super. 2004), is misplaced. (*See* Appellant's Brief, at 24). The issue in *Kurian* was whether, in a medical malpractice action, the trial court could admit the report of a treating physician as an expert report where the plaintiff had not identified that physician during discovery and the plaintiff produced his report for first time in opposition to a motion for summary judgment. *See Kurian*, *supra* at 155-62. We see nothing in *Kurian* that is helpful to Appellant.

[5] In her brief, Appellant also appears to contend that Dr. Milman should not have been allowed to testify as an expert because he was not a medical doctor and/or that he was wrongly permitted to testify beyond the scope of his expert report. (*See* Appellant's Brief, at 28-29). Appellant has waived this claim as it was neither raised in Appellant's 1925(b) statement nor in her statement of questions. (*See* Concise Statement of Errors Complained

*(Footnote Continued Next Page)*

Generally, a trial court's decision to grant or deny a motion *in limine* is

subject to an evidentiary abuse of discretion standard of review. The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Schmalz v. Manufacturers & Traders Trust Co.*, 67 A.3d 800, 802-03 (Pa. Super. 2013) (citation omitted).

Appellant claims that Appellee did not furnish Dr. Milman's expert report until April 2013, well after the February 20, 2013 deadline. (*See* Appellant's Brief, at 26). Appellant alleges that this late disclosure severely

*(Footnote Continued)* ───────────────

of on Appeal, 3/10/14, at unnumbered page 1; Appellant's Brief, at 5). As amended in 2007, Pennsylvania Rule of Appellate Procedure 1925 provides that issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. *See* Pa.R.A.P. 1925(b)(4)(vii); see also *Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in Commonwealth v. Burton*, 973 A.2d 428, 431 (Pa. Super. 2009) (*en banc*). Further, new legal theories cannot be raised for the first time on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Lastly, issues not explicitly raised in the statement of questions involved or fairly suggested thereby are waived. *See Nolt v. TS Calkins & Assoc., LP.*, 96 A.3d 1042, 1047 n.4 (Pa. Super. 2014); Pa.R.A.P. 2116(a).

prejudiced her. (**See id.** at 27). Appellant acknowledges that she agreed to an extension of time for expert reports but contends that this was to allow an IME of her, not to allow Appellee to produce the report of a non-physician toxicologist/pharmacologist, which added a new theory of defense. (**See id.**).

The Pennsylvania Rules of Civil Procedure govern expert testimony discovery. **See** Pa.R.C.P. 4003.5. Under Rule 4003.5, a trial court may sanction a party for failing to identify an expert by excluding his or her testimony. **See** Pa.R.C.P. 4003.5(a)(4)(b). However, we have held that "preclusion of testimony is a drastic sanction, and it should be done only where the facts of the case make it necessary; the prejudice may not be assumed." **Kurian**, **supra** at 162 (citation omitted). "The court must balance the facts and circumstances of each case to determine the prejudice to each party. In practice, sanctions for noncompliance with discovery requests are generally not imposed until there has been a refusal to comply with a court order compelling compliance." **Green Const. Co. v. Dept. of Transp.**, 643 A.2d 1129, 1139 (Pa. Cmwlth. 1994), *appeal denied*, 672 A.2d 311 (Pa. 1996) (citations omitted).[6] We look to four factors to determine whether expert testimony should be excluded:

---

[6] While decisions of the Commonwealth Court are not binding on us, they may serve as persuasive authority. **See Commonwealth v. Ortega**, 995 A.2d 879, 885 (Pa. Super. 2010), *appeal denied*, 20 A.3d 1211 (Pa. 2011).

(1) the extent of any actual prejudice or surprise suffered by the party against whom the expert testified; (2) the ability of that party to cure the prejudice or surprise; (3) the extent to which allowance of the testimony disrupted the orderly and efficient trial of the case or of other cases in the court; and (4) the bad faith or willfulness of the party that has failed to comply with the order.

***Neal by Neal v. Lu***, 530 A.2d 103, 109 (Pa. Super. 1987) (citations and quotation marks omitted).

Here, the trial court explained its decision as follows:

Dr. [Harvey] Millman's expert report was produced to [Appellant's] counsel on April 11, 2013, more than two months prior to the trial date. Both parties had already agreed to extend the timeline of expert reports for [Appellee] to produce a report from an otolaryngologist. [Appellant] argues that the production of Dr. Millman's report was a bait and switch performed by [Appellee]. There is no evidence of bad faith on the part of [Appellee]. Further, there was little evidence of any surprise suffered by [Appellant], as she had more than two months to review Dr. Millman's findings before the trial started. This late identification did not disrupt the orderly and efficient trial of the case.

(Trial Ct. Op., at 12) (quotation marks and footnotes omitted). We agree. We note that despite Appellant's claims of unfair surprise and prejudice, there is no evidence of record that she sought a continuance in order to obtain additional expert reports. Further, it is evident that Appellant knew that toxicology would be an issue in the matter, as she had already obtained an expert toxicologist to testify on her behalf. (**See** Appellant's Brief, at 26 (noting that she had furnished expert toxicology reports to Appellee in 2012)). Thus, Appellant has not demonstrated she suffered prejudice that would mandate the extreme sanction of preclusion of expert testimony. ***See***

- 17 -

*Green*, *supra* at 1138-39 (plaintiff did not demonstrate sufficient prejudice to mandate sanction of exclusion of expert testimony where it was not disclosed until five days prior to trial). Because Appellant has not shown that the trial court abused its discretion in denying her motion *in limine*, her claim must fail.

In her final issue, Appellant avers that the trial court erred in precluding her from making references to a medical evaluation performed on behalf of Appellee by Dr. Kenneth Briskin. (*See* Appellant's Brief, at 30-31). We disagree. As discussed above, we review a trial court's evidentiary ruling for an abuse of discretion or a misapplication of law, and Appellant must demonstrate prejudice for any mistake to constitute reversible error. *See Stumpf*, *supra* at 1035-36.

Appellant argues that she was prejudiced by the failure of Appellee to comply with Pennsylvania Rule of Civil Procedure 4010(b)(1) and provide her with a copy of Dr. Briskin's expert report. (*See* Appellant's Brief, at 30-31). However, Appellant waived this argument, as she never argued below that Appellee failed to comply with Pa.R.C.P. 4010(b)(1) or that she was prejudiced by the lack of an expert report. (*See* N.T. Motion Hearing, 6/18/13, at 3-32). New legal theories cannot be raised for the first time on appeal. *See Commonwealth v. Truong*, 36 A.3d 592, 598 (Pa. Super. 2012) (*en banc*), *appeal denied*, 57 A.3d 70 (Pa. 2012); Pa.R.A.P. 302(a). Accordingly, we find that Appellant has waived this issue for our review.

Further, Appellant's boilerplate language combined with a two-sentence argument that the trial court's decision not to allow any mention of Dr. Briskin prejudiced her is completely undeveloped. (*See* Appellant's Brief, at 30-31). It is long-settled that failure to argue and to cite any authority supporting the argument constitutes a waiver of the issue on appeal. *See Jones v. Jones*, 878 A.2d 86, 90 (Pa. Super. 2005); *see also* Pa.R.A.P. 2119(a), (b). Accordingly, Appellant waived her claim for this reason as well.

Moreover, under Pennsylvania law, a party is not entitled to draw an adverse inference from the absence of a witness if that witness is within the reach and knowledge of both parties. *See Oxford Presbyterian Church v. Weil-McLain Co., Inc.*, 815 A.2d 1094, 1102-03 (Pa. Super. 2003) (party entitled to draw adverse inference from failure to call witness, where witness is only available to one of parties, and it appears witness has special information material to issue, and testimony would not be merely cumulative). Here, the record reflects that the parties agreed to the IME by Dr. Briskin; Dr. Briskin did not issue an expert report, but both counsel had copies of his findings; and his testimony was cumulative of that of Appellant's experts, namely that Appellant's problems were not caused by any structural deformity to her nose or mouth. (*See* N.T. Motion Hearing, 6/18/13, at 4-6; 8). Thus, because Appellant failed to show she was entitled

to draw any adverse inference from Appellee's failure to call Dr. Briskin to testify, her issue lacks merit. **See Oxford**, **supra** at 1102-03.

For the reasons discussed above, Appellant's claims lack merit. Therefore, we affirm the judgment.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/6/2014