J-A17014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ELIAS A. KARKALAS, M.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| WILLIAM MARTIN, GRAEBERS LUMBER COMPANY AND INDIANA LUMBERMAN'S MUTUAL INSURANCE COMPANY, | |
| Appellees | No. 3176 EDA 2015 |

Appeal from the Order September 17, 2015
in the Court of Common Pleas of Chester County
Civil Division at No.: 12-11560

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:              **FILED SEPTEMBER 06, 2016**

Appellant, Elias A. Karkalas, M.D., appeals from the order of September 17, 2015, which granted the motion of Appellees, William Martin and Graebers Lumber Company, for summary judgment in this action arising out of a motor vehicle collision.[1]  On appeal, Appellant challenges the trial court's grant of a motion *in limine* filed by Appellees that precluded Appellant's treating physicians from offering expert testimony as to causation.  For the reasons discussed below, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] On April 25, 2014, the parties stipulated to the removal of defendant Indiana Lumberman's Mutual Insurance Company from the action.  Thus, it is not a party to this appeal.

We take the underlying facts and procedural history in this matter from our independent review of the certified record. Appellant commenced this action by filing a writ of summons on November 5, 2012. On November 18, 2013, following an administrative conference, the trial court issued an order requiring, in part, that Appellant file a complaint by December 31, 2013; that the parties complete all discovery by May 30, 2014; and that Appellant provide all expert reports by June 30, 2014. (*See* Administrative Conference Order, 11/18/13, at unnumbered page 1).

On January 16, 2014, Appellant filed a complaint claiming, in part, that on November 18, 2010, a truck operated by Appellee, William Martin, and owned by Appellee, Graebers Lumber Company, struck his car, seriously injuring him. (*See* Complaint, 1/16/14, at 2 ¶ 6 and 5 ¶ 30). Appellant claimed that, because of the accident, he suffered serious injuries, requiring extensive medical treatment. (*See id.* at 4 ¶ 18). Whether the automobile accident caused these injuries, and whether Appellant's treating physicians could testify as to causation is central to this matter.

Specifically, Appellant alleged that he developed congestive heart failure and required aortic valve replacement and reconstruction. (*See id.* at ¶¶ 19-22). Joseph Bavaria, M.D., treated Appellant for this condition. (*See id.* at ¶ 20). In a September 18, 2012 letter addressed to Dr. Arthur Belber, Cardiac Consultant, Dr. Bavaria stated, in pertinent part:

> It has been noted that the patient had a traumatic deceleration [six] months prior to surgery reconstruction of the ascending

aorta. It was also [two] months prior to rapid development of heart failure **most probably secondary to valvular dysfunction**. We know that the ascending aorta is the second most common site for intimal disruption after deceleration trauma.

Intimal tears are associated with dilated ascending aorta and subsequent development of aortic regurgitation. If the AI is severe enough, then a dilated cardiomyopathy become evident. **While it is impossible to fully ascertain why this series of conditions developed, it is certain that there is a significant relationship to his deceleration trauma.**

([Appellant's] Memorandum of Law in Support of his Response in Opposition to Motion *in Limine* of [Appellees] to Preclude [Appellant's] Experts from Testifying at Trial who Have Failed to Submit Expert Reports, 5/07/15, at Exhibit A) (emphases added).

Appellant also alleges that he sustained persistent cognitive difficulties; Lawrence A. Kerson, M.D., diagnosed Appellant with a concussion and post-traumatic stress disorder. (**See** Complaint, 1/16/14, at 5 ¶¶ 24-26). In a December 20, 2010 progress note, Dr. Kerson stated, in pertinent part:

[Appellant] . . . was involved in an automobile accident on November 18, 2010 in which I-beams protruding from a flatbed truck in front of him sheared the top of his car and even took off the passenger side front headrest. . . . At the time of impact, he was stunned but did not lose consciousness. He describes [five] or [six] minutes of being "in shock".

Dr. Kerson continues in the "Assessment" section:

1. Post Concussion Syndrome . . . (Primary) The clear combination of symptoms after an accident without clear loss of consciousness but with a significant acceleration deceleration component **likely reflects** post concussion syndrome, without

- 3 -

loss of consciousness. The differential diagnosis includes post traumatic stress disorder, given the terrifying quality of the accident.

([Appellant's] Memorandum of Law in Support of his Response in Opposition to Motion *in Limine* of [Appellees] to Preclude [Appellant's] Experts from Testifying at Trial who Have Failed to Submit Expert Reports, 5/07/15, at Exhibit D) (emphasis added).

Further, Appellant also alleged that because of the accident, he suffered from visual disturbances requiring surgery for posterior vitreous detachment in both eyes. (**See** Complaint, 1/16/14, at 5 ¶ 27). Arunan Sivalingam, M.D., treated Appellant for this condition. (**See id.** at ¶ 28). In an October 10, 2012 letter addressed "To Whom it May Concern", Dr. Sivalingam stated, in pertinent part:

> [Appellant] has been followed here for pars plana vitrectomy for posterior vitreous detachment and significant floaters. Originally, he had a deceleration injury related to a car accident and he had dissected aortic aneurism and some time after that, he has also developed significant floaters . . .
>
> . . . based on my impression and for him to undergo the pars plana vitrectomy for significant floaters, **probably the deceleration injury had something to do with the premature precipitation of posterior vitreous detachment**.

([Appellant's] Memorandum of Law in Support of his Response in Opposition to Motion *in Limine* of [Appellees] to Preclude [Appellant's] Experts from Testifying at Trial who Have Failed to Submit Expert Reports, 5/07/15, at Exhibit B) (emphasis added).

Lastly, Robert C. Kleiner, M.D., also treated Appellant for his vision problems. (*See id.* at Exhibit C). In a March 20, 2012 letter addressed to Jeffrey Katzman, M.D., Dr. Kleiner stated, in pertinent part:

> As you know [Appellant] was involved in a serious automobile accident [one and one-half] years ago. **Immediately following the accident, he noted a marked increase in floaters in both eyes** . . . They are quite large and seemed to interfere significantly with his vision and lifestyle.
>
> \*     \*     \*
>
> I told him that, unfortunately, the only way to relieve his visual symptoms would be to perform vitrectomy surgery and that we usually try to discourage vitrectomy surgery just to relieve vitreous floaters.  However, he seems to be very bothered by his symptoms and they do seem to interfere with his lifestyle significantly. . . .

(*Id.*) (emphasis added).

Subsequent to the filing of the complaint, the parties stipulated to several discovery extensions.  The parties ultimately agreed to complete all discovery by January 30, 2015, and Appellant was to provide final expert reports to Appellees by February 16, 2015.  (*See* Second Joint Stipulation for Extension of Discovery Deadlines, 11/03/14, at unnumbered page 1).

Of relevance to this appeal, on March 30, 2015, Appellees filed a motion for summary judgment arguing that Appellant could not prove a causal connection between the accident and his injuries because of the lack

of expert medical testimony.[2] (*See* [Appellees'] Motion for Summary Judgment against [Appellant], 3/30/15, at 5-6 ¶¶ 14-19). On May 6, 2015, Appellant filed a response to the motion.

On April 17, 2015, Appellees filed a motion *in limine*. In the motion, Appellees sought to preclude Appellant's physicians from testifying as experts at trial. (*See* Motion *in Limine* of [Appellees] to Preclude [Appellant's] Experts from Testifying at Trial who have Failed to Submit Expert Reports, 4/17/15, at 3-4 ¶¶ 10-17). Appellees averred that Appellant had not served or produced any expert reports. (*See id.* at 3 ¶ 10). Appellant filed a response to the motion on May 7, 2015. In his memorandum of law, Appellant argued that his witnesses would testify as his treating physicians, not as expert witnesses, and thus were not required to submit expert reports. (*See* [Appellant's] Memorandum of Law in Support of his Response in Opposition to Motion *in Limine* of [Appellees] to Preclude [Appellant's] Experts from Testifying at Trial who Have Failed to Submit Expert Reports, 5/07/15, at unnumbered pages 5-6).

On June 16, 2015, the trial court granted Appellees' motion *in limine* ordering that Appellant's treating physicians, Drs. Bavaria, Sivalingam,

---

[2] For the sake of completeness, although not at issue in the instant appeal, we note that Appellees also filed a motion for partial summary judgment, solely addressing the validity of Appellant's claim for punitive damages. (See [Appellees'] Motion for Partial Summary Judgment on [Appellant's] Punitive Damage Claims, 3/30/15, at 6-7 ¶¶ 24-28). The trial court denied that motion on June 12, 2015.

Kerson, and Kleiner "will not be permitted to give their respective opinions concerning causation between the alleged negligence and the injuries claimed." (Order, 6/16/15, at 1). The trial court stated, "[e]xpert testimony is clearly necessary in this case and [Appellant] does not deny it." (**Id.** at 7 n.1). Further, the court held that the reports by Appellant's treating physicians were insufficient to provide "competent medical testimony [of] a causal link between the alleged negligence and the injuries claimed." (**Id.** at 8) (citation omitted). That same day, the trial court denied the motion of Appellees for summary judgment as moot based upon its grant of the motion *in limine*. (**See** Order, 6/16/15, at unnumbered page 1).

On July 14, 2015, the trial court conducted a conference call with the parties, and during that call Appellant indicated that he still intended to proceed to trial based on a theory of minor injuries sustained during the accident. (**See** [Appellees'] Motion for Summary Judgment against [Appellant], 7/16/15, at 4 ¶¶ B and 14).

On July 16, 2015, Appellees filed a second motion for summary judgment, arguing that Appellant could not proceed on a "bumps and bruises" theory because Appellant had elected the limited tort option and, therefore, must provide evidence of "serious injury." (**Id.** at 4 ¶¶ 14-16). Appellant filed a response on August 17, 2015. In his response, Appellant admitted that he could not proceed on a bumps and bruises theory because of his election of limited tort. (**See** [Appellant's] Response to [Appellees']

Motion for Summary Judgment against [Appellant], 8/17/15, at 2). However, Appellant took issue with the trial court's grant of the motion *in limine*, stating:

> However, [Appellant's] heart, head [and] eye injuries are all serious injuries which vault the limited tort serious injury threshold. In that respect, [Appellant] respectfully disagrees with [the trial court's] ruling pursuant to the Order dated June 16, 2015, in which [Appellant's] treating physicians were precluded from testifying as to causation relating to those serious injuries, in that, *inter alia*, the treating physicians were held to the standards of expert testimony, whereas [Appellant] intended on presenting the treating physicians' testimony at trial as fact witnesses, based upon the physicians' treatment notes and opinions rendered during their course of treatment of [Appellant]. . . .

(*Id.*) (quotation marks omitted).

On September 17, 2015, the trial court granted the motion of Appellees for summary judgment. (*See* Order, 9/17/15, at unnumbered page 1). The trial court held, based upon its prior ruling on the motion *in limine*, that Appellant needed expert medical testimony to prove causation and that the testimony of his treating physicians was insufficient to do so. (*See id.* at unnumbered pages 3-4 n.1).

On October 8, 2015, Appellant filed a motion for reconsideration. The trial court denied the motion that same day. On October 14, 2015, Appellant filed the instant, timely notice of appeal. On October 20, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed a timely

Rule 1925(b) statement on November 9, 2015. *See id.* On November 10, 2015, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

> 1. Whether the trial court abused its discretion and erred as a matter of law in granting [Appellees'] motion *in limine* precluding the testimony of [Appellant's] treating physicians based solely upon the [t]rial [c]ourt's review of the physicians' treatment notes which were **not** prepared in anticipation of litigation[?]
>
> 2. Whether the trial court erred in refusing to permit the treating physicians to testify, either at trial, outside the presence of the jury or at a *Frye*[3] Hearing, so that the treating physicians could present the entirety of their factual testimony, including what was meant by their treatment notes[?]
>
> 3. Alternatively, whether the treating physicians' treatment notes, if deemed an expert report, opined as to causation within a reasonable degree of medical certainty[?]

(Appellant's Brief, at 2) (emphasis in original).

On appeal, Appellant seeks reversal of both the trial court's June 16, 2015 order granting the motion *in limine* filed by Appellees and its September 17, 2015 order granting the motion for summary judgment filed by Appellees. (*See* Appellant's Brief, at 20).

We briefly note our standards of review.

---

[3] The *Frye* test, the standard which governs the admissibility of scientifically-adduced expert evidence in Pennsylvania courts, was first announced in *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923), and was adopted by the Pennsylvania Supreme Court. *See Commonwealth v. Topa*, 369 A.2d 1277, 1282 (Pa. 1977); *see also Grady v. Frito-Lay, Inc.*, 839 A.2d 1038 (Pa. 2003) (continuing to apply *Frye* rule in Pennsylvania).

A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Dibish v. Ameriprise Financial, Inc.***, 134 A.3d 1079, 1095 (Pa. Super. 2016), *appeal denied*, 2016 WL 3767847 (Pa. filed July 7, 2016) (citation omitted).

Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the fact-finder. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate court may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Id.*** at 1084-85 (citation omitted).

- 10 -

In his first issue, Appellant claims that the trial court erred as a matter

of law in applying Pennsylvania Rule of Civil Procedure 4003.5[4] and

_____

[4] Rule 4003.5 provides:

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) A party may through interrogatories require

(A) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(B) subject to the provisions of subdivision (a)(4), the other party to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his or her answer a report of the expert or have the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.

(2) Upon cause shown, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

(A) such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate, and

(B) the provisions of subdivision (a)(4) of this rule.

(3) A party may not discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who

*(Footnote Continued Next Page)*

is not expected to be called as a witness at trial, except a medical expert as provided in Rule 4010(b) or except on order of court as to any other expert upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

> *Note*: For additional provisions governing the production of expert reports in medical professional liability actions, see Rule 1042.26 et seq. Nothing in Rule 1042.26 et seq. precludes the entry of a court order under this rule.

(4) A party may not discover the communications between another party's attorney and any expert who is to be identified pursuant to subdivision (a)(1)(A) or from whom discovery is permitted under subdivision (a)(3) regardless of the form of the communications, except in circumstances that would warrant the disclosure of privileged communications under Pennsylvania law. This provision protects from discovery draft expert reports and any communications between another party's attorney and experts relating to such drafts.

(b) An expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

(c) To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, the direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto. However, the expert shall not be prevented from testifying as to facts or opinions on matters on

*(Footnote Continued Next Page)*

Pennsylvania Rule of Evidence 702[5] to the treatment notes of his physicians who were going to testify as fact witnesses. (**See** Appellant's Brief, at 12). He maintains that the Pennsylvania courts have allowed treating physicians to offer expert opinions as to causation without being subjected to Rule 4003.5 so long as their opinions were not developed in anticipation of litigation. (**See id.** at 14). Appellant argues that the treatment notes in the instant matter included opinions as to causation, but were based upon the physicians' treatment of Appellant and not prepared in anticipation of litigation, and thus the trial court erred in not allowing the physicians to offer

_(Footnote Continued)_ ———————

> which the expert has not been interrogated in the discovery proceedings.

Pa.R.C.P. 4003.5.

[5] Pennsylvania Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

expert opinions as to causation. (*See id.* at 15). Appellant amplifies this theory in his reply brief, contending that an intervening Pennsylvania Supreme Court decision, *Polett v. Public Commc'ns. Inc.*, 126 A.3d 895, 910 (Pa. 2015), is dispositive of this matter. (*See* Appellant's Reply Brief, at 1-4). We disagree.

We briefly note that, in a negligence action, such as the instant one, the burden is on the plaintiff to prove four elements: "1. A duty or obligation recognized by law. 2. A breach of the duty. 3. **Causal connection between the actor's breach of the duty and the resulting injury**. 4. Actual loss or damage suffered by complainant." *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa. Super. 2005), *appeal denied*, 901 A.2d 499 (Pa. 2006) (citation omitted, emphasis in original). Further,

> [i]t is beyond question that the mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone as there remains to be proved the link of causation. . . . [E]ven when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct, and it must be shown to have been the proximate cause of plaintiff's injury.

*Id.* (citation and quotation marks omitted).

Appellant contends, relying on *Polett*, *supra*, that the trial court erred in holding that his treating physicians could not render expert testimony as to causation. (*See* Appellant's Reply Brief, at 1-4). This Court has stated that:

In a personal injury case, the plaintiff must prove the existence of a causal relationship between the injury complained of and the alleged negligent act to be entitled to recover for the injury. Generally, a plaintiff must prove causation by expert medical testimony. There is an exception, however, where there is an obvious causal relationship between the two. An obvious causal relationship exists where the injuries are either an immediate and direct or the natural and probable result of the alleged negligent act. The two must be so closely connected and so readily apparent that a layman could diagnose (except by guessing) the causal connection. . . .

***Lattanze v. Silverstrini***, 448 A.2d 605, 608 (Pa. Super. 1982) (citations, emphasis and quotation marks omitted).

Here, the trial court specifically held that expert medical testimony was required because the connection between Appellant's injuries and the accident was not so closely related. (***See*** Order, 6/16/15, at 7 n.1). At no point in his brief does Appellant contest this holding. (***See*** Appellant's Brief, at 11-20).

However, our Supreme Court has held that fact witnesses, including treating physicians can offer expert testimony, even if they have not complied with Pa.R.C.P. 4003.5. In ***Miller v. Brass Rail Tavern, Inc.***, 664 A.2d 525, 531 (Pa. 1995), the Court held that a non-physician coroner, testifying as a fact witness, could offer expert testimony as to time of death. The Court stated:

Coroner Wetzler was not called upon by [a]ppellant or his counsel to determine the facts surrounding Ronald, Jr.'s death. Rather, he had been summoned by the people of Clinton County to carry out the duties of his office. He was notified of the accident at approximately 7:30 a.m. by the County Communications Center, and after conducting an investigation,

he made a determination with respect to the time of death. His contact with the accident was completed well before this instant action was initiated.

*Miller*, *supra* at 531 (footnote omitted).

In *Polett*, in late June 2006, the plaintiff underwent knee replacement surgery on both legs. *See Polett*, *supra* at 899. On August 16, 2006, Dr. Robert Booth, the plaintiff's surgeon, examined her and found her to be making better than average progress. *See id.* Because of this, Dr. Booth provided the plaintiff's name as a candidate to appear in a promotional video for the manufacturer of the replacement knee. *See id.* The plaintiff agreed and, on August 23, 2006, she appeared in the video; as part of the video, she walked on a treadmill and rode an exercise bike. *See id.* at 900.

Immediately following the filming of the video, the plaintiff's condition markedly deteriorated. *See id.* at 900-01. When Dr. Booth examined the plaintiff approximately one month later, and on subsequent examinations, Dr. Booth attributed the plaintiff's progressively deteriorating condition to riding the bike in the promotional video. *See id.* at 901-02. The plaintiff ultimately filed suit against the manufacturer, the video company, and others. *See id.* at 902.

At trial, the trial court allowed Dr. Booth, testifying as a fact witness, to offer expert testimony that riding the exercise bike for the video caused the deterioration in her knees, despite the plaintiff's failure to comply with Pa.R.C.P. 4003.5. *See id.* at 904. The jury found in favor of the plaintiff

and the defendants appealed; an *en banc* panel of this Court held, in part, that the trial court erred in allowing Dr. Booth to offer testimony as to causation.  ***See id.*** at 906.

Our Supreme Court disagreed, noting that at the time it made its decision the trial court had in its possession Dr. Booth's contemporaneous treatment notes from 2006, as well as his deposition taken during the course of litigation.  ***See id.*** at 924.  The Court agreed with the trial court that the 2006 treatment notes, written well before the commencement of litigation, demonstrated that Dr. Booth was actively looking to determine the cause of the plaintiff's difficulties and expressly ruled out other possible causes.  ***See id.*** at 925.  Thus, the Supreme Court held that the trial court did not err in allowing Dr. Booth to offer expert testimony as to causation despite the failure to comply with Pa.R.C.P. 4003.5.  ***See id.*** at 925-28.

However, the instant matter is factually distinct from both ***Miller*** and ***Polett***. Firstly, Appellant's characterizations of the treating physicians' documentation as treatment notes created prior to litigation, (***see*** Appellant's Brief, at 12, 15-16), is questionable.  Secondly, even assuming, *arguendo*, that the documents constitute treatment notes not made in anticipation of litigation, they are still insufficient.  They simply do not demonstrate the detailed search for the causes of Appellant's injuries with the physician considering various possible causes for the injuries and ruling them out before settling on the accident as a cause that our Supreme Court

approved in **Polett**. ***See id.*** at 925. We discuss each doctor's documentation separately.

Dr. Bavaria's "note" was actually a letter written to a "cardiac consultant" on September 18, 2012, more than two years after the accident and less than two months prior to commencement of litigation. ([Appellant's] Memorandum of Law in Support of his Response in Opposition to Motion *in Limine* of [Appellees] to Preclude [Appellant's] Experts from Testifying at Trial who Have Failed to Submit Expert Reports, 5/07/15, at Exhibit A). In it, he simply states that Appellant's heart problems were "most probable secondary to valvular dysfunction. We know that the ascending aorta is the second most common site for intimal disruption after deceleration trauma." ([Appellant's] Memorandum of Law in Support of his Response in Opposition to Motion *in Limine* of [Appellees] to Preclude [Appellant's] Experts from Testifying at Trial who Have Failed to Submit Expert Reports, 5/07/15, at Exhibit A). He then notes that it is impossible to "fully ascertain" why Appellant developed heart problems but states "that there is a significant relationship to his deceleration trauma." (***Id.***).

Dr. Sivalingam's "note" was also in letterform, addressed "To Whom it May Concern," on October 10, 2012, also more than two years after the accident and less than one month prior to the commencement of litigation. (***Id.*** at Exhibit B). Further, the language of the letter makes it clear that it was an advocate's letter drafted to persuade some unknown to allow

Appellant to undergo eye surgery, as it states, "based on my impression and **for him to undergo** the pars plana vitrectomy for significant floaters[.]" (***Id.***) (emphasis added). Dr. Sivalingam's letter notes that Appellant developed floaters "some time after" the accident. (***Id.*** at Exhibit B). Dr. Sivalingam does not offer a detailed opinion regarding causation simply saying that "probably" the accident had "something to do with the premature precipitation" of the floaters. (***Id.***).

Dr. Kleiner's "note" was also in the form of a letter addressed to another physician, dated March 20, 2012, over a year and one-half after the accident and less than eight months prior to the commencement of litigation. (***See id.*** at Exhibit C). It appears to contradict Dr. Sivalingam's letter as it reiterates Appellant's claim that he noticed "a marked increase in floaters" immediately following the accident. (***Id.*** at Exhibit C). At no point does Dr. Kleiner himself offer an opinion that the accident caused the floaters.

Lastly, Dr. Kerson's document does appear to be a treatment note written closer in time to the accident rather than to the litigation. However, it simply notes the details of Appellant's accident. (***See id.*** at Exhibit D). In his assessment he states Appellant's symptoms "likely reflect" post-concussion syndrome. (***Id.***).

These documents are nothing like the series of contemporaneous treatment notes deemed acceptable in ***Polett***. ***See Polett***, ***supra*** at 924-

25. Rather than resembling the conscientious search for a cause approved of in **Polett**, these documents appear closer to the type of report this Court rejected in **Kurian v. Anisman**, 851 A.2d 152 (Pa. Super. 2004). In **Kurian**, the parents of a child with Down's syndrome filed a medical malpractice suit claiming that his doctors failed to evaluate properly and repair the child's heart problems, causing permanent damage. **See Kurian**, **supra** at 153. As in the instant matter, the plaintiffs in **Kurian** never identified any expert witnesses. **See id.** Instead, plaintiffs sought to have the child's treating physician testify as to causation. **See id.** at 155-56. In support of this, the plaintiffs offered a single treatment note in which the treating physician stated that the defendant "apparently missed" the child's problem when evaluating an echocardiography report. **Id.** at 156.

While agreeing that the physician completed this report "without the anticipation of litigation," something that is questionable in the instant matter, we concluded that this single statement was insufficient. **Id.** (internal quotation marks omitted). We stated that it was hardly surprising that the treating physician's report did not contain a detailed assessment of proximate cause noting, "[a] doctor is concerned with treating his patients, not about whether a prior doctor's breach of a particular standard of care was the factual cause of his patient's injuries." **Id.**

Here, it is evident that Appellant's treating physicians were not engaged in searching for the cause of Appellant's medical problems, as was

the physician in **Polett**. Rather, they were "concerned with treating [their] patient," not determining whether the accident was the proximate cause of Appellant's injuries. **Kurian**, **supra** at 156. Thus, our Supreme Court's decision in **Polett** does not mandate the reversal of the trial court's decision. Instead, it is more akin to the report in **Kurian**. Therefore, the trial court did not abuse its discretion in granting the motion *in limine* filed by Appellees. **See Dibish, supra** at 1095. Appellant's first issue does not merit relief.

In his second issue, Appellant contends that if the treatment notes did not contain the "requisite degree of medical certainty" with respect to causation it was incumbent upon Appellees to depose the treating physicians so that "they would have extrapolated upon and clarified their treatment notes and statements." (Appellant's Brief, at 15). Moreover, Appellant believes that the trial court should have held a **Frye** hearing so that its decision would not have been solely based upon the "four [] corners of the treatment notes." (**Id.** at 16; **see also id.** at 15-16).

Initially, we reject Appellant's contentions that it was either incumbent upon Appellees to depose the treating physicians and/or that the trial court was required to hold a **Frye** hearing so as to amplify the information contained in the treating physician notes.

As stated above, it is the plaintiff's burden to prove causation in a personal injury case, not the defendant's burden. **See Lux**, **supra** at 1286.

- 21 -

It was not incumbent upon Appellees to depose the treating physicians in order to augment Appellant's evidence with respect to causation. *See id.*

Moreover, in their first motion for summary judgment, Appellees specifically claimed that Appellant could not prove a causal connection between his injuries and Appellees' alleged negligence. (*See* [Appellees'] Motion for Summary Judgment against [Appellant], 3/30/15, at 5-6 ¶¶ 14-19). While the trial court denied the motion as moot, it did so because of its grant of the motion *in limine*. (*See* Order, 6/16/15, at 1). Thus, when Appellees filed a second motion for summary judgment, Appellant was well aware that the issue of causation was central to his case and that the trial court had already found that the treating physicians' notes were insufficient to demonstrate causation. The Pennsylvania Rules of Civil Procedure provide that in response to a motion for summary judgment the responding party must point to "evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced." Pa.R.C.P. 1035.3(a)(2). Thus, it was Appellant's responsibility to refute the claim that there was insufficient evidence of causation by producing such evidence. The trial court did not have an obligation to hold a hearing wherein Appellant hoped to produce such evidence. *See id.* Appellant's second claim lacks merit.

In his final claim, Appellant alleges that the trial court erred in finding that Dr. Bavaria and Dr. Kerson's notes did not provide an opinion on

causation to a reasonable degree of medical certainty. (*See* Appellant's Brief, at 17-20). We disagree.

We have held that, in order to testify with respect to causation, the expert testimony must be made to a reasonable degree of medical certainty. *See Cohen v. Albert Einstein Med. Ctr.*, 592 A.2d 720, 723 (Pa. Super. 1991), *appeal denied*, 602 A.2d 855 (Pa. 1992). In **Cohen**, we explained:

> When a party must prove causation through expert testimony the expert must testify with reasonable certainty that in his professional opinion, the result in question did come from the cause alleged. An expert fails this standard of certainty if he testifies that the alleged cause possibly, or could have led to the result, that it could very properly account for the result, or even that it was very highly probable that it caused the result.
>
> The issue is not merely one of semantics. There is a logical reason for the rule. The opinion of a[n] . . . expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff it must find as a fact that the condition was legally caused by the defendant's conduct. . . [I]t is the intent of our law that if the plaintiff's . . . expert cannot form an opinion with sufficient certainty so as to make a [professional] judgment, there is nothing on the record with which a [factfinder] can make a decision with sufficient certainty so as to make a legal judgment. However, to make an admissible statement on causation, an expert need not testify with absolute certainty or rule out all possible causes of a condition. Expert testimony is admissible when, taken in its entirety, it expresses reasonable certainty that the accident was a substantial factor in bringing about the injury. The expert need not express his opinion in precisely the same language we use to enunciate the legal standard. That an expert may, at some point during his testimony, qualify his assertion does not necessarily render his opinion inadmissibly speculative.

*Id.* at 723-24 (citations and quotation marks omitted).

Here, the reports of Drs. Bavaria and Kerson do not meet this standard. Dr. Kerson's opinion that Appellant's symptoms after the accident "likely reflect[]" post-concussive syndrome was simply not rendered with the required degree of medical certainty. ([Appellant's] Memorandum of Law in Support of his Response in Opposition to Motion *in Limine* of [Appellees] to Preclude [Appellant's] Experts from Testifying at Trial who Have Failed to Submit Expert Reports, 5/07/15, at Exhibit D); *see Cohen*, *supra* at 723-24. While Dr. Bavaria's conclusion that there is a "significant relationship" between the accident and Appellant's heart problems is closer to an opinion rendered with the requisite degree of medical certainty, it is also insufficient. ([Appellant's] Memorandum of Law in Support of his Response in Opposition to Motion *in Limine* of [Appellees] to Preclude [Appellant's] Experts from Testifying at Trial who Have Failed to Submit Expert Reports, 5/07/15, at Exhibit A); *see also Albert v. Alter*, 381 A.2d 459, 470 (Pa. Super. 1977) (finding that the phrase "very highly probable that it caused the result" was not sufficient to demonstrate causation). Thus, because these reports did not contain the requisite degree of medical certainty, the trial court did not err in finding that they were insufficient to demonstrate causation. *See Cohen*, *supra* at 723; *Albert*, *supra* at 470. Appellant's final claim lacks merit.

Thus, for the reasons discussed above, we find that the trial court did not abuse its discretion in granting the motion *in limine* filed by Appellees.

*See Dibish*, *supra* at 1095.  Therefore, because Appellant failed to prove causation, the trial court neither committed an error of law nor abused its discretion in granting summary judgment.  *See id.* at 1085.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2016