J-A27039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KEITH MILLER AND KAREN BROOKS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| POTTSTOWN HOSPITAL, LLC, JOHN | : | No. 247 EDA 2025 |
| DOES 1-10, PAMELA FRANZ, M.D., | : | |
| KUNAL KAMBALI, M.D., EDWARD | : | |
| KNIGHT PAVILLARD, M.D., BRENDAN | : | |
| M. MINER, M.D., POTTSTOWN | : | |
| HOSPITAL - TOWER HEALTH, AND | : | |
| TOWER HEALTH | : | |

Appeal from the Order Entered December 23, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2022-20805

BEFORE:  BOWES, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED FEBRUARY 18, 2026**

Keith Miller ("Miller") and Karen Brooks (together, "Plaintiffs") appeal from the order entered by the Montgomery County Court of Common Pleas ("trial court") granting summary judgment in favor of Pottstown Hospital, LLC, Pottstown Hospital — Tower Health, Tower Health, Edward Knight-Pavillard, M.D., Kunal Kambali, M.D., and Pamela Franz, M.D. (collectively "Defendants").[1]  Plaintiffs argue that the trial court abused its discretion in

_____

[1] Plaintiffs failed to serve Brendan M. Miner, M.D., with the complaint; as such, he is not a party in this matter.  Additionally, John Does 1-10 are not identified as parties in this appeal, nor were they served the complaint.

granting summary judgment in favor of Defendants based on their untimely introduction of an expert report, as the late filing did not cause Defendants prejudice. We affirm.

In October 2020, Miller underwent arthroscopic knee surgery performed by Dr. Mark Schwartz at the Premier at Exton Surgery Center. Following his discharge, he began to experience severe pain and swelling in his leg. Dr. Schwartz instructed Miller to go to the Pottstown Memorial Hospital Emergency Department. In the emergency room, Dr. Kambali and Dr. Franz undertook Miller's care, noting numbness in his toes. The hospital conducted an ultrasound of Miller's leg, and ultimately diagnosed him with post-operative hematoma and calf deep vein thrombosis. Further vascular consultation was sought from Dr. Knight-Pavillard. However, a vascular physician's assistant saw Miller, not Dr. Knight-Pavillard. Miller was discharged on full anticoagulation with heparin and oxycodone. Miller's symptoms progressed and he was later diagnosed with popliteal artery pseudoaneurysm and a compressive hematoma.

The trial court set forth the subsequent procedural history:

Plaintiffs Keith Miller and Karen Brooks, husband and wife, commenced this action on October 20, 2022, by writ of summons against Pottstown Hospital, LLC, certain related companies, and several individual physicians. On December 20, 2022, the Court Administrator issued as of course a Civil Case Management Order ("CMO"), pursuant to Rule 200(4) of [the Montgomery County Court of Common Pleas'] Local Rules of Civil Procedure, providing that all fact discovery must be completed within eighteen months of the commencement of the action and that Plaintiffs' expert reports must be served within nineteen months of commencement

- 2 -

of the action, and also setting deadlines for [Defendants'] expert reports and for dispositive motions. Pursuant to the order, fact discovery was to be completed by April 21, 2024, and Plaintiffs' expert reports were to be served by May 20, 2024.

Despite the CMO, Plaintiffs did not file a complaint until April 10, 2024, in response to a rule to file complaint obtained by [Defendants] on March 20, 2024. Plaintiffs thus filed their complaint eleven days before the close of fact discovery. … Plaintiffs claimed that [Defendants] were negligent in failing to detect, diagnose, and treat an allegedly injured transected left popliteal artery, in breach of the applicable standard of care. Plaintiffs did not file certificates of merit until May 29, 2024, after [Defendants] had filed a notice of their intent to enter a non pros on May 16, 2024.

On June 21, 2024 — two months after the deadline for completing fact discovery had passed — Plaintiffs filed the [] motion for extraordinary relief to extend case discovery deadlines. The motion revealed that on October 14, 2022, eight days before the commencement of this action, Plaintiffs had commenced a medical malpractice lawsuit in the Court of Common Pleas of Chester County against Mark Schwartz, M.D., and two medical practices, apparently arising out of the arthroscopic left knee surgery that [] Miller had received earlier on the same day on which he was treated at Pottstown Hospital. The motion stated that the Chester County Court had "only recently entered a Case Management Order with deadlines extending to the fall of 2025." The Motion further stated that "[t]he Plaintiff is seeking coordination of actions pursuant to Pa.R.C[iv].P. 213.1 into one action" in the Chester County Court; it did not state when a motion for coordination was filed. The motion for extraordinary relief sought an unspecified extension of the case management deadlines pending disposition of the motion for coordination by the Chester County Court.

On July 10, 2024, [Defendants] filed their response in opposition to the motion for extraordinary relief. [Defendants] asserted that Plaintiffs had failed to seek any discovery in this case until after the time for fact discovery under the CMO had expired. [Defendants] disclaimed familiarity with the proceedings in the Chester County Court but argued that the motion for coordination was an attempt to effectively reopen discovery against [Defendants]. The response sought denial of the motion for

- 3 -

extraordinary relief on the basis that Plaintiffs had failed to seek any timely discovery and to provide a timely expert report and had not provided any excuse for such failures.

On the same day, [Defendants] filed their motion for summary judgment. The motion asserted that Plaintiffs could not establish medical negligence by [Defendants] without an expert opinion and that Plaintiffs had failed to provide any expert report, even though the time for doing so had expired, pursuant to the CMO, on May 20, 2024 — more than seven weeks earlier. Judge [Gail A.] Weilheimer was the assigned judge on this case and therefore had responsibility for the motion for summary judgment. [] [T]he motion for extraordinary relief … was assigned to [Judge Jeffrey S. Saltz,] Administrative Judge of the Court's Civil Division. [Judge Saltz entered an order, directing Plaintiffs to (1) attach the motion for coordination filed in Chester County to the motion for extraordinary relief, and (2) notify the court of any decision by Chester Country regarding coordination.]

Later in the day on July 19, 2024, Plaintiffs filed a praecipe to attach, as directed, with a copy of their motion to coordinate. That attachment revealed, from the timestamp of the Chester County Prothonotary, that the motion to coordinate was filed in the Chester County Court on July 10, 2024.

On August 9, 2024, Plaintiffs filed their response to [Defendants'] motion for summary judgment. Attached to the response was the expert report of a physician dated August 2, 2024. … Plaintiffs asserted that because they had provided an expert report to support their claims of medical negligence, albeit after the deadline in the CMO, summary judgment should be denied.

On August 23, 2024, [Defendants] filed a supplemental brief in support of their motion for summary judgment, and on September 5, 2024, Plaintiffs filed a sur reply. The sur reply briefly addressed the motion for coordination in Chester County … [, which was denied without prejudice on August 30, 2024.] ... In his Memorandum, [Chester County] Judge [Bret M.] Binder explained that [Defendants] were entitled to a timely decision from th[e trial c]ourt on their motion for summary judgment and that granting coordination would cause further unnecessary delay of this case. Judge Binder concluded: "If the Motion for Summary

Judgment is denied, Plaintiffs may file a new Motion for Coordination." …

Judge Weilheimer held oral argument on the Motion for Summary Judgment on December 13, 2024. On December 23, 2024, she issued an Order granting the Motion. …

Plaintiffs filed a Notice of Appeal from Judge Weilheimer's Order to the Superior Court [on January 23, 2025,[2]] and subsequently filed a timely Concise Statement of Matters Complained of on Appeal.

Trial Court Opinion, 5/20/2025, at 1-6 (footnotes and some capitalization omitted, footnote added).[3]

On appeal, the Plaintiffs raise the following questions for our review:

1. Whether the [Plaintiffs'] notice of appeal should be found to be timely filed on January 22, 2025[,] even though the filing fee was not satisfied until January 23, 2025[,] where due to the case being marked or labeled closed due to some internal error of the court [Plaintiffs were]not and would not have been able to file and pay the fee without the court case file being re-animated and marked "open" and where [Plaintiffs'] counsel appeared at the after hours drop box at the Montgomery County Courthouse on January 22, 2025[,] to drop off the notice of appeal[?]

2. Where [] Plaintiffs in a medical malpractice action, in accordance with Pa.R.C[iv].P. 1035.3(b), supplemented the record with their expert report on August 9, 2024[,] in response to [Defendants'] motion for summary judgment although the expert report was not timely produced by May 20, 2024[,] pursuant to the court administrator's case management order issued as of course pursuant to Montg.Co.Civ.R. 200 and where there was no prejudice to the

_____

[2] The thirtieth day to file a timely appeal was January 22, 2025.

[3] As Judge Weilheimer was confirmed to be a judge on the United States District Court for the Eastern District of Pennsylvania, Judge Saltz issued the Rule 1925(a) opinion.

adverse party as no trial date had then been set and [Plaintiffs] had neither serially violated any order of court compelling discovery or expert disclosure request nor violated any order of court pursuant to Pa.R.C[iv].P. 4003.5 throughout the pendency of the litigation, did the Honorable trial court abuse discretion and commit an error of law in granting summary judgment against [Plaintiffs]?

Plaintiffs' Brief at 5-6 (issues reordered, some capitalization omitted).

## Timeliness of Appeal

In their first claim, Plaintiffs contend that this appeal should be considered timely filed on January 22, 2025, despite the fact that the appeal was not docketed and the filing fee remained unpaid until January 23, 2025. *Id.* at 31.[4] They argue that there was a breakdown of trial court operations, noting their attempts to use e-file on January 22, 2025, were unsuccessful. *Id.* at 31, 33. In an attempt to file a timely appeal, Plaintiffs highlight that their counsel travelled many hours to the trial court to deposit the notice of appeal and related documents in the nighttime drop box at the courthouse. *Id.* at 34. Plaintiffs indicated that the clerk at the prothonotary in Montgomery County stated that the filing would be dated January 22, 2025. *Id.* at 35 n.4. Plaintiffs further assert that although the filing fee was paid on January 23,

_____

[4] This Court issued a rule to show cause to Plaintiffs regarding the timeliness of their appeal. Plaintiffs responded and alleged a breakdown of court processes, attaching several exhibits, including emails with the clerk and pictures of the appeal being dropped in the trial court's nighttime drop box on January 22, 2025. Ultimately, this Court discharged the rule for this panel to determine whether the untimely appeal should be excused based on this breakdown.

2025, an appeal should not be dismissed for failing to timely pay the requisite filing fee. *Id.* at 31-32 (citing *First Union Nat. Bank v. F.A. Realty Investors Corp.*, 812 A.2d 719 (Pa. Super. 2002)). They claim that in light of the circumstances and their reasonable explanation, this appeal should be considered timely filed. *Id.* at 35.

In response, Defendants do not "challenge the factual recitation regarding the timing of the filing or the case law relied upon regarding that issue." Defendants' Brief at 12.

This Court may consider the timeliness of an appeal sua sponte because it goes to this Court's jurisdiction to hear the appeal. *Lobos Mgmt. v. Powell*, 330 A.3d 438, 443 (Pa. Super. 2025). "Because jurisdiction is a pure question of law, our standard of review is de novo, and our scope of review is plenary." *Strasburg Scooters, LLC v. Strasburg Rail Rd., Inc.*, 210 A.3d 1064, 1068 (Pa. Super. 2019).

A notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). Appellate courts cannot generally extend the time for filing an appeal. *See* Pa.R.A.P. 105(b); *Blucas v. Agiovlasitis*, 179 A.3d 520, 525 (Pa. Super. 2018) ("Where a statute fixes the time within which an appeal may be taken, the time may not be extended as a matter of indulgence or grace.").

"Nonetheless, it has long been the law of this Commonwealth that the failure to file a timely appeal as a result of a breakdown in the court system

is an exception to that general rule." ***Commonwealth v. Stansbury***, 219 A.3d 157, 160 (Pa. Super. 2019). A breakdown in the operations of the court requires proof such as "a failure on the part of the prothonotary to fulfill his or her ministerial duties[.]" ***Rothstein v. Polysciences, Inc.***, 853 A.2d 1072, 1075 (Pa. Super. 2004).

The record reflects that Plaintiffs' appeal was docketed and the filing fee was paid one day late, on January 23, 2025. ***See*** Pa.R.A.P. 903(a). However, the parties do not dispute that Plaintiffs encountered a problem with the e-filing system and Plaintiffs timely submitted the appeal in the prothonotary's drop box on January 22, 2025. Moreover, Plaintiffs correctly observe that "the perfection of the appeal does not depend in any way on the payment of the filing fee." ***First Union Nat. Bank***, 812 A.2d at 723. As such, we find that there was a breakdown in the court's process and decline to quash Plaintiffs' appeal as untimely. ***See Stansbury***, 219 A.3d at 160.

## Motion for Summary Judgment

Plaintiffs next contend that the trial court abused its discretion in granting summary judgment in favor of Defendants. Plaintiffs' Brief at 24. They highlight that Defendants did not articulate any prejudice suffered as a result of the late disclosure of the expert report, noting Defendants failed to state the trial had been delayed, continued or rescheduled, or that Plaintiffs failed to comply with multiple court orders compelling the expert's disclosure. ***Id.*** at 25-26. Furthermore, Plaintiffs argue that Defendants never served any

- 8 -

interrogatories, document requests, or expert interrogatories, evidencing the lack of prejudice. *Id.* at 29-30; *see also id.* at 27 (stating that Defendants "had not propounded any expert discovery or discovery whatsoever … such that[] the facts demonstrate insufficient salient circumstances present to substantiate the type of prejudice required" to justify the sanction of precluding a late expert report). They also base their contention of no prejudice on the fact that the expert report was not introduced on the eve of trial. *Id.* at 24.

Plaintiffs assert that the trial court erred in relying on *Kurian ex rel. Kurian v. Anisman*, 851 A.2d 152 (Pa. Super. 2004) (excluding an expert report and granting appellees' motion for summary judgment after appellants continually violated court-ordered deadlines and the expert witness report was submitted the day of trial), noting the lack of violations of court-ordered deadlines in the instant case. *Id.* at 28-29. According to Plaintiffs, the trial court's finding that Defendants articulated prejudice is "a clear misstatement of fact and law" such that reversal is required. *Id.* at 27.

The following guides our review of an order granting summary judgment:

> In reviewing a grant of summary judgment, this Court's standard of review is de novo and our scope of review is plenary. A trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the

nonmoving party. The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and may grant summary judgment only where the right to such a judgment is clear and free from doubt. An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion.

*Toth v. Chambersburg Hosp.*, 325 A.3d 870, 873-74 (Pa. Super. 2024) (citations and quotation marks omitted).

Plaintiffs' claims are premised on the negligence of the doctors at the hospital. "In order to set forth a cause of action in negligence, [a plaintiff is] required to plead sufficient facts which would establish that: (1) the doctor owed them a duty of care; (2) the doctor breached that duty; (3) they were injured; and (4) the injuries were proximately caused by the doctor's breach of duty." *McAleer v. Geisinger Med. Ctr.*, 332 A.3d 38, 42 (Pa. Super. 2025) (citation omitted). To establish these elements, "the plaintiff must offer an expert witness who will testify to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable standards, and that such deviation was the proximate cause of the harm suffered." *Id.* (citation omitted); *see also Vazquez v. CHS Pro. Prac., P.C.*, 39 A.3d 395, 397–98 (Pa. Super. 2012) ("With all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation.").

"[F]or purposes of ruling on a motion for summary judgment, the record includes any and all (1) pleadings, (2) depositions, answers to interrogatories, admissions and affidavits, and (3) reports signed by an expert witness that would, if filed, comply with [Pa.R.Civ.P.] 4003.5(a)(1), whether or not the reports have been produced in response to interrogatories." ***Monroe v. CBH20, LP***, 286 A.3d 785, 802 (Pa. Super 2022) (en banc) (citation, quotation marks, and emphasis omitted). Further, Pa.R.Civ.P. 1035.3(b) "permits a party to supplement the record when it files a motion in opposition to the entry of summary judgment."[5] ***Id.*** at 804 (citation omitted). Therefore, "pursuant to Rules 1035.1 and 1035.3, affidavits and expert reports may be used by the non-moving party to create an issue of material fact to defeat a motion for summary judgment, and supplementary expert reports are timely if submitted within thirty days of the motion for summary judgment." ***Id.*** However, pursuant to Pa.R.Civ.P. 4003.5(b),[6] a court may "prohibit a late-identified expert witness from testifying at trial." ***Id.***

_____

[5] Rule 1035.3(b) states that "[a]n adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence."  Pa.R.Civ.P. 1035.3(b).

[6] Rule 4003.5(b) states the following:

> An expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the

*(Footnote Continued Next Page)*

This Court in **Kurian** discussed the interplay between Rules 1035.3(b) and 4003.5(b) in the context of a late filed expert report attached to a response to a motion for summary judgment, and concluded:

> Rule 1035.3(b) did not override the trial court's authority to exclude an untimely expert, for requiring that an expert report be admitted just as long as it was filed within thirty days of the summary judgment motion would take away the very discretion Rule 4003.5(b) gives to the trial court and make a mockery of court orders and court-imposed deadlines.

**Kurian**, 851 A.2d at 161 (cleaned up). Where "a party makes a timely response to a summary judgment motion and attempts to supplement the record with otherwise untimely expert reports, the court may, on its own motion, determine whether this is allowed under Rule 4003.5(b)." **Id.** at 159. In so deciding, "the court must apply the long-standing prejudice standard found in the case law construing Rule 4003.5(b)," which acknowledges that the "preclusion of testimony is a drastic sanction, and it should be done only where the facts of the case make it necessary; the prejudice may not be assumed." **Id.** at 159-60, 162 (cleaned up). Instead,

> [a]ssuming that a party has not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, no sanction should be imposed unless the complaining party shows that he has been prejudiced from properly preparing his case for trial as a result of the dilatory disclosure.

---

> result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Pa.R.Civ.P. 4003.5(b).

- 12 -

*Id.* at 162 (citation and quotation marks omitted).

Based on this interpretation of the relevant rules, the ***Kurian*** Court ultimately found that the trial court properly precluded the late introduction of the expert report and granted summary judgment in favor of the appellees. *Id.* at 162. The Court noted that the appellees would be prejudiced by the late introduction of the expert report because the appellants had violated numerous court-ordered deadlines and the report was offered on the eve of trial. *Id.* at 162. The Court further found the late filing of the report caused "unfair surprise and prejudice," as the appellees would have no time to respond to the expert testimony. *Id.* While prejudice could be allayed by delaying trial, we concluded that further delaying trial would "disrupt the efficient and just administration of justice and would send a blatant message that case management deadlines are meaningless." *Id.* Thus, this Court held that

> [w]hen these deadlines are violated with impunity, as was done by the [appellants] in this case, the abusing party must be prepared to pay the consequences. Usually the consequences are less than what occurred here, an order which effectively dismisses the lawsuit. Yet, when the other party suffers prejudice because of the unjustified delay, this result is proper and in accordance with Pennsylvania's Rules of Civil Procedure.

*Id.*

With this background, we turn to the facts of this case. At the hearing on the motion for summary judgment, Plaintiffs agreed with Judge Weilheimer's statements that the expert report was filed late. N.T.,

12/13/2024, at 3-4, 7; *see also id.* at 22 (court noting the expert report was filed about three months late). Plaintiffs acknowledged that they first engaged the expert at the time they filed the complaint. *Id.* at 15.

Defendants indicated they were unduly prejudiced by the delay, noting that allowing the late expert report would give Plaintiffs "a second bite at the apple." *Id.* at 18. They also informed the court that Plaintiffs had not conducted any discovery before the discovery deadline. *Id.* at 24-25. Counsel for Defendants further stated:

> They first chose to not prosecute this case, not do any discovery, not comply with any deadlines, and then after the fact, after these deadlines have expired, say, you know what, we want to take a second bite, even though my clients are already entitled to judgment because they haven't met their burden. That is incredibly prejudicial. So that is really the nexus of, you know, the prejudice that would befall the defendants were this expert report to be considered in the summary judgment issue.
>
> And I would also note that the case management order states that the trial listing is to be imminent after the disposition of summary judgment or dispositive motions. And that's to say that if our summary motion is denied and plaintiffs' expert report is to be properly considered despite being untimely, what position does that put the defendants in?

*Id.* at 18-19. After the court indicated Defendants would be given time to respond to the expert report, counsel stated the delay to trial could be "a year plus [or] longer. *Id.* at 20.

When granting summary judgment, Judge Weilheimer stated the following:

> The [trial c]ourt finds no issue of material fact as to the following: [] Miller[] was seen at the Emergency Department of

Pottstown Hospital on October 22, 2020. Plaintiff[s] filed a writ to initiate this lawsuit on October 20, 2022. Plaintiff[s] did not file a complaint until [Defendants] filed a praecipe to enter a rule upon the Plaintiffs to file a Complaint. Plaintiffs filed a complaint in response to the rule on April 10, 2024. The cause of actions in the complaint are based in medical malpractice. Plaintiff[s] did not file a certificate of merit. Only after [Defendants] filed a notice of intent to enter a judgment of non-process did the Plaintiff[s] file certificates of merit.

On December 22, 2022, the Montgomery County Court entered a [CMO] which included deadlines from the date of the commencement of the action. The discovery deadline was April 20, 2024. The Plaintiff[s] did not seek any discovery. Plaintiff[s] did not file any interrogatories or take any depositions. Plaintiffs['] expert reports were required to be served by May 20, 2024. Plaintiff[s] did not produce a timely expert report.

Plaintiff[s] filed a motion to extend the CMO deadlines on June 21, 2024, which was after the date the deadline for discovery and expert reports had expired. This motion to extend the deadlines was denied on September 12, 2024.

On July 10, 2024[, Defendants] filed a motion for summary judgment as Plaintiff[s] failed to produce an expert report and therefore cannot prove their case. In order to recover for medical malpractice, Plaintiff[s] must establish that [Defendants] owed a duty of care to Plaintiff[s] and breached that duty, causing the harm for which Plaintiff[s] seek[] to recover. Expert testimony is required to meet these requirements in this lawsuit.

Plaintiff[s] filed their expert report with their response to the motion for summary judgment two and a half months after the deadline for its submission. Plaintiff[s] gave no explanation for their failure to comply with the CMO deadlines nor requested leave of court to file an untimely expert report. Plaintiff[s] instead argued that the motion for summary judgment should be denied alleging there is no prejudice to the defense. [Defendants] articulated the prejudice during oral argument.

CMOs are important tools to provide for the orderly process of lawsuits. The deadlines set in these CMOs ensure the goal of orderly process is met. *See Kurian*[*, supra*]. The deadlines established in a court order is not a recommendation, it is a

requirement. Throughout this case the Plaintiff[s] ha[ve] consistently failed to prosecute their cause of action. Plaintiff[s] only acted in response to [Defendants'] motions when their case was at jeopardy of being dismissed. The claims of medical malpractice in this lawsuit must be supported by expert testimony. This testimony was not provided within the applicable deadlines.

Trial Court Order, 12/23/2024, at 1-3 (footnotes omitted); *see also* Trial Court Opinion, 5/20/2025, at 8, 9 (stating that allowing Plaintiffs to produce an untimely expert report after failing to comply with the deadlines would prejudice Defendants by giving Plaintiffs "a second bite at the apple," and would require Defendants "to defend the case even longer, despite Plaintiffs' neglect") (citation omitted).

Based upon the evidence in the record, we find support for the trial court's conclusion that Defendants would be prejudiced by permitting Plaintiffs to proceed with the untimely filed expert report. Like the appellants in *Kurian*, Plaintiffs repeatedly showed contempt for court-imposed deadlines, failing to meet any of the deadlines established by the trial court and only filing the required documents when provoked by Defendants' filings. Plaintiffs did not file the complaint until Defendants filed a rule to file complaint; they did not file the requisite certificate of merits until Defendants filed a notice of intent to enter judgment of non pros; the expert report, due by May 20, 2024, was not filed until August 9, 2024, after Defendants filed their motion for summary judgment; even their motion to extend the trial court's deadlines was not filed until nearly three months after the deadlines passed. Further, Plaintiffs did not propound discovery prior to that deadline expiring. Plaintiffs

offer no explanation for any of these failings, and, in particular, why the expert report was not filed earlier despite acknowledging they had retained the expert at the time the complaint was filed.

Allowing the introduction of the untimely expert report would have permitted Plaintiffs to benefit from their lack of compliance with the trial court's clear deadlines. *See Monroe*, 286 A.3d at 805 (noting prejudice can be found where plaintiff "showed contempt for court deadlines"); *see also Kurian*, 851 A.2d at 162 (stating that although local case management deadlines are court orders and are not "meaningless" and "[w]hen these deadlines are violated with impunity, as was done by the [appellants] in this case, the abusing party must be prepared to pay the consequences"). Although prejudice resulting from the late filing of the expert report could have been remedied by delaying the trial and giving Plaintiffs more time to respond to the report, a delay "would disrupt the efficient and just administration of justice and would send a blatant message that case management deadlines are meaningless." *Kurian*, 851 A.2d at 162 (citation omitted).

Plaintiffs cite no case law to support the proposition that the untimely filing of an expert report is allowed so long as it was not produced on the eve of trial. *See* Pa.R.A.P. 2119(a) (noting that argument must be supported by pertinent analysis and citation to authority). To the contrary, *Kurian* makes clear that this fact is not dispositive in determining whether the opposing party suffered prejudice. *See Kurian*, 851 A.2d at 159-60, 162. Since initiating

this matter, Plaintiffs have failed to ensure that this case proceeded expeditiously, and it was within the trial court discretion to exclude the untimely report to enforce its own case management orders.[7]  As such, we conclude that the trial court did not abuse its discretion in omitting Plaintiffs' expert report from consideration under Rule 4003.5(b), and granting summary judgment in favor of Defendants.  Accordingly, Plaintiffs are not entitled to relief.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/18/2026

_____

[7] Plaintiffs baldly claim that the "trial court did not address the [***Gerrow v. John Royle & Sons***, 813 A.2d 778 (Pa. 2002) (plurality)] line of cases such [] that the 4003.5(b) discretionary review does not necessarily require that 4003.5(a)(1) inquiry was made.  In this case, [Plaintiffs] were not propounded with any 4003.5(a)(1) inquiry by [Defendants.]"  Plaintiffs' Brief at 30. Plaintiffs do not expound upon what "line of cases" follow ***Gerrow***, nor do they acknowledge that ***Gerrow*** is a plurality decision and does not constitute binding authority.  ***See MacPherson v. Magee Mem'l Hosp. for Convalescence***, 128 A.3d 1209, 1223 (Pa. Super. 2015) (en banc) ("While the ultimate order of a plurality opinion; *i.e.* an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority.").  In any event, the opinion announcing the judgment of the court in ***Gerrow*** does not even cite to Rule 4003.5(a)(1), which sets forth a procedure for obtaining expert opinions.  Moreover, Plaintiffs fail to explain how Rule 4003.5(a)(1) addresses discovery and expert report deadlines. Therefore, this contention does not entitle Plaintiffs to relief.